TAGGED OPINION



**ORDERED in the Southern District of Florida on January 31, 2023.**

_____
**Scott M. Grossman, Judge
United States Bankruptcy Court**
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VICTORIA CALIXTO,         Case No. 17-18317-SMG

    Debtor.                   Chapter 13

_____/

## ORDER GRANTING MOTION TO REOPEN CHAPTER 13 CASE

Debtor Victoria Calixto seeks to reopen her chapter 13 bankruptcy case so that she can file amended bankruptcy schedules to disclose a post-confirmation personal injury claim against Gulfstream Park Racing Association, Inc., which she had not previously disclosed in her bankruptcy case. Gulfstream opposes her motion, arguing it is an improper attempt avoid an adverse summary judgment ruling in state court litigation based on her failure to disclose this claim. For the reasons discussed below, the Court will grant her motion.

## Background

The Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on June 30, 2017.[1] Together with her bankruptcy petition, she filed all of her required bankruptcy schedules, her statement of financial affairs, and a creditor matrix listing the names and addresses of her creditors.[2] The same day she filed her petition, she also filed a chapter 13 plan,[3] a statement of her current monthly income and calculation of plan commitment period,[4] and a certification that she had taken the required budget and credit counseling course.[5]

But her chapter 13 plan – as originally filed – could not be confirmed, and so on October 20, 2017, the Court dismissed her case.[6] Ten days later, however, she filed a motion to reinstate her case,[7] and on the day of the hearing on that motion, she filed a first amended chapter 13 plan.[8] On November 22, 2017, the Court granted her motion to reinstate.[9] She then filed a second amended plan on February 23, 2018,[10] and on March 20, 2018, she filed a third amended plan.[11] Her third amended plan proposed monthly plan payments of $330.00 for the first ten months, and $293.00 for

---

[1] ECF No. 1.
[2] *Id.*
[3] ECF No. 2.
[4] ECF No. 4.
[5] ECF No. 6.
[6] ECF No. 15.
[7] ECF No. 17.
[8] ECF No. 20.
[9] ECF No. 22.
[10] ECF No. 32.
[11] ECF No. 35.

months 11 through 60.[12] The plan also provided that "PROPERTY OF THE ESTATE WILL VEST IN THE DEBTOR(S) UPON PLAN CONFIRMATION."[13]

On April 30, 2018, the Court entered an order confirming her third amended plan,[14] and on July 5, 2018, the Court entered an amended confirmation order.[15] The Debtor then made all of her required plan payments[16] – paying all of her creditors 100% of their allowed claims[17] – and on June 1, 2022, she received a discharge under 11 U.S.C. § 1328(a).[18] Her case was then closed on September 28, 2022,[19] pursuant to 11 U.S.C. § 350(a).

On March 17, 2021 – about three years after her plan was confirmed, and a little more than a year before she completed her plan payments – the Debtor alleges that she slipped and fell at the premises owned and operated by Gulfstream. On June 30, 2022 – about a month after receiving her discharge – she then sued Gulfstream for negligence in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida.[20] The Debtor never amended her bankruptcy schedules to disclose this post-confirmation litigation claim.

Gulfstream moved for summary judgment in the state court, arguing that the Debtor lacked standing and was judicially estopped from pursuing the case because

---

[12] *Id.*
[13] *Id. See also* 11 U.S.C. § 1322(b)(9) ("the plan may . . . provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity.").
[14] ECF No. 38
[15] ECF No. 41 (the amended order corrected a scrivener's error in the date of her confirmation hearing).
[16] ECF No. 43.
[17] ECF No. 50. This included full payment of $5,629.16 in priority tax claims due to the IRS. *Id.*
[18] ECF No. 48.
[19] ECF No. 52.
[20] *Calixto v. Gulfstream Park Racing Ass'n*, Case No. CACE-22-009588.

she never amended her bankruptcy schedules to disclose it.[21] The Debtor then filed her motion to reopen this case.[22]

## Analysis

Bankruptcy Code section 350(b) provides that a closed bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause."[23] Bankruptcy courts have broad discretion to reopen a closed case,[24] and in deciding whether to reopen a case, courts "generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the affected party and other equitable factors."[25] To properly analyze these factors in this case, it is important to first understand the differences between a chapter 13 bankruptcy case and a chapter 7 bankruptcy case for individual debtors. With an understanding of those differences, the Court will then examine whether the litigation claim is property of the Debtor's bankruptcy estate, whether she was required to disclose it, and how (if at all) lack of disclosure affected her bankruptcy estate and its creditors.

### I. Chapter 13 Bankruptcy Cases vs. Chapter 7 Bankruptcy Cases.

Individual debtors most commonly file for bankruptcy under either chapter 13 or chapter 7 of the Bankruptcy Code.[26] A chapter 7 case is a liquidation, in which the debtor surrenders to a trustee all non-exempt property she owned as of the petition

---

[21] ECF No. 59-2.
[22] ECF No. 53.
[23] 11 U.S.C. § 350(b).
[24] *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010); *In re Zinchiak*, 406 F.3d 214, 223 (3d Cir. 2005); *In re Alpex Comput. Corp.*, 71 F.3d 353, 356 (10th Cir. 1995).
[25] *In re Losada*, 557 B.R. 244, 248 (Bankr. S.D. Fla. 2016).
[26] Individual debtors can also file for bankruptcy under chapter 11 (reorganization) or chapter 12 (family farmer or fisherman), but the vast majority of individual cases are filed under chapters 7 or 13.

4

date. The chapter 7 trustee then liquidates those assets to pay her creditors. And assuming the debtor did not commit certain enumerated bad acts,[27] the debtor will then receive a discharge of most[28] of her prepetition debts. In a chapter 13 case, however, a debtor does not surrender property to a trustee. Instead, chapter 13 "allows an income-earning debtor to hold onto her property while she pays her creditors back over a three-to-five-year period"[29] out of her "regular income."[30]

While there is a trustee in chapter 13 cases, the chapter 13 trustee's duties differ significantly from that of a chapter 7 trustee. Unlike a chapter 7 trustee, a chapter 13 trustee does not have a duty to liquidate property of the estate.[31] Rather, the chapter 13 trustee collects the debtor's plan payments,[32] retains those payments pending confirmation of the plan,[33] and if the plan is confirmed, distributes the payments to creditors in accordance with the plan.[34] Another important consequence of confirmation is that if the plan is confirmed, unless the plan or confirmation order say otherwise, confirmation vests all property of the estate back in the debtor.[35]

---

[27] *See* 11 U.S.C. § 727 (listing the circumstances under which a chapter 7 debtor may not receive a discharge).

[28] *See* 11 U.S.C. § 523(a) (listing the types of debts that are excepted from discharge).

[29] *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015).

[30] To qualify for chapter 13, a debtor must be an "individual with regular income."11 U.S.C. § 109(e). An "individual with regular income" is defined as an individual "whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of [the Bankruptcy Code] other than a stockbroker or a commodity broker." 11 U.S.C. § 101(30).

[31] *See* 11 U.S.C. §§ 1302(b)(1); 704(a)(1). Nor does a chapter 13 trustee have a duty to file periodic reports of the debtor's business operations. *See* 11 U.S.C. §§ 1302(b)(1); 704(a)(8).

[32] 11 U.S.C. § 1326(a)(1).

[33] 11 U.S.C. § 1326(a)(2).

[34] *Id.* If the plan is not confirmed, the chapter 13 trustee must return to the debtor any payments not previously paid and not yet due and owing to creditors, after deducting any unpaid administrative expenses. *Id.*

[35] 11 U.S.C. § 1327(b).

Moreover, unlike in a chapter 7 case where the chapter 7 trustee has the right to "use, sell or lease" property of the estate,[36] in a chapter 13 case, the debtor generally remains in possession of all property of the estate[37] and has the right – exclusive of the trustee – to "use, sell, or lease" property of the estate.[38] In other words, in a chapter 7 case, pre-petition litigation claims belong to the bankruptcy estate (not the debtor), and only the trustee (not the debtor) can sue on those claims. Thus, when a chapter 7 debtor fails to disclose a pre-petition litigation claim and then attempts to sue on it, there are usually issues as to standing, authority to sue, and potential violations of the automatic stay (as an impermissible act by the debtor to exercise control over property of the estate).

But in a chapter 13 case – regardless of whether it is property of the estate or has re-vested in the debtor – only the individual debtor can bring a litigation claim.[39] Further, because a chapter 13 plan is funded from a debtor's income (rather than her assets), successful prosecution of a litigation claim in a chapter 13 case is usually less important to creditor recoveries – particularly when a debtor will repay her unsecured creditors 100% of their claims from her regular income.[40]

---

[36] 11 U.S.C. § 363(b).
[37] 11 U.S.C. § 1306(b) ("Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.").
[38] 11 U.S.C. § 1303 ("Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of" the Bankruptcy Code).
[39] *See* 11 U.S.C. §§ 1303, 1306(b).
[40] In a chapter 13 case where a debtor proposes to pay unsecured creditors less than the full amount of their claims, however, the valuation and prosecution of a litigation claim may be relevant to determine whether the plan meets the "best interest of creditors test." *See* 11 U.S.C. § 1325(a)(4) (a chapter 13 plan must provide distributions to unsecured creditors in an amount not less than they would receive in a chapter 7 liquidation).

## II. The Litigation Claim Was Property of the Debtor's Bankruptcy Estate.

Whether under chapter 7 or chapter 13, upon the filing of a bankruptcy petition an estate is created.[41] With certain exceptions, Bankruptcy Code section 541 provides that the estate consists of all legal or equitable interests of the debtor in property *as of the commencement of the case.*[42] Under section 541(a)(5), certain property interests acquired within 180 days after the petition date also become property of the estate: (A) property acquired by bequest, devise, or inheritance; (B) property acquired as a result of a marital property settlement or divorce decree; or (C) property acquired as a beneficiary of a life insurance policy or death benefit plan.[43] And under section 541(a)(7), any interest in property that *the estate* acquires after the commencement of the case also becomes property of the estate.[44]

In a chapter 7 case, there is a clear distinction between property the debtor acquires after the commencement of the case and property the estate acquires after the commencement of a case. This is less clear in a chapter 13 case. In a chapter 13 case, Bankruptcy Code section 1306 provides that property of the estate also includes (in addition to the property specified in section 541): (1) all property listed in section 541 that *the debtor* acquires after the commencement of the case (but before the case

---

[41] 11 U.S.C. § 541(a).
[42] 11 U.S.C. § 541(a)(1) (emphasis added).
[43] 11 U.S.C. § 541(a)(5). This provision reflects a policy decision by Congress to try to prevent manipulation of a bankruptcy filing date to exclude property of this type from becoming property of the estate. While certainly not accounting for all foreseeable circumstances, Congress decided that by including these types of property interests received within 6 months of a bankruptcy filing, it could reasonably deter unscrupulous debtors who anticipated coming into money from an inheritance, divorce, or life insurance, from gaming the system. In other words, this provision would neuter a debtor's strategy of filing for bankruptcy the day before a divorce decree was finalized, or when a loved one was on their "deathbed," to avoid including the to-be-received property from her estate.
[44] 11 U.S.C. § 541(a)(7).

7

is closed, dismissed, or converted to a case under chapter 7, 11, or 12), plus (2) earnings from services performed by the debtor after the commencement of the case (but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12).[45] In other words, in a chapter 13 case, property of the estate includes all of the property listed in section 541 (including post-petition property the *estate* acquires), plus the debtor's post-petition earnings, plus post-petition property *the debtor* acquires.

Bankruptcy Code section 1327(b) then states that, unless otherwise provided in the plan or confirmation order, upon confirmation of a chapter 13 plan, all property of the estate vests in the debtor.[46] This means that any property that was property of the estate under sections 541 and 1306 reverts to – and becomes – property of the debtor upon confirmation. But what about property the debtor acquires after confirmation of her plan, but before she completes her plan payments, obtains a discharge, and her case is closed – like the litigation claim here? Under section 1306(a)(1), it seems clear that the Debtor's litigation claim against Gulfstream was property of her bankruptcy estate.[47] That is because it is property of a kind specified in section 541 (a legal or equitable interest of the debtor in property), that the debtor

---

[45] 11 U.S.C. § 1306(a).
[46] The Debtor's plan here clearly provided that upon confirmation, property of the estate vested back in the Debtor. *See also* 11 U.S.C. § 1322(b)(9).
[47] While the issue is clear in this case, in other contexts the interplay between Bankruptcy Code sections 1306 and 1327 is anything but clear. *See, e.g., In re Marsh*, 2023 WL 215263, at *3 (Bankr. W.D. Mo. Jan. 17, 2023); (discussing five different approaches to reconciling § 1306 and § 1327); *In re Baker*, 620 B.R. 655, 663–64 (Bankr. D. Colo. 2020) (same).

8

acquired after commencement of the case, but before the case was closed, dismissed, or converted.[48]

## III. Eleventh Circuit Case Law Required the Debtor to Disclose the Litigation Claim on Her Bankruptcy Schedules.

Bankruptcy Code section 521 requires debtors to file with the Bankruptcy Court a schedule of their assets and liabilities[49] and a statement of financial affairs.[50] This is where a debtor would disclose the existence of a litigation claim and any actual pending litigation as of the petition date. Federal Rule of Bankruptcy Procedure 1007 sets forth the detailed requirements for complying with the statutory requirements to make these disclosures, including as to timing. Schedules of assets and liabilities and statements of financial affairs must be filed with the bankruptcy petition, or within 14 days thereafter.[51]

Federal Rule of Bankruptcy Procedure 1007(h) then specifically addresses "Interests Acquired or Arising After Petition." At the time this case was filed – and at the time the motion to reopen was filed – Rule 1007(h) read, in relevant part, as follows:

> If, **as provided by §541(a)(5)** of the [Bankruptcy] Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the . . . chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues

---

[48] *See* 11 U.S.C. § 1306(a)(1).
[49] 11 U.S.C. § 521(a)(1)(B)(i); *see also* Fed. R. Bankr. P. 1007(b)(1)(A).
[50] 11 U.S.C. § 521(a)(1)(B)(iii); *see also* Fed. R. Bankr. P. 1007(b)(1)(D).
[51] Fed. R. Bankr. P. 1007(c).

9

> notwithstanding the closing of the case, except that the schedule need not be filed in a . . . chapter 13 case with respect to property acquired after entry of the order . . . discharging the debtor in a . . . chapter 13 case.[52]

It should be emphasized that Rule 1007(h) by its plain terms only applies to property a debtor acquires or becomes entitled to acquire under Bankruptcy Code section 541(a)(5), which, again, addresses inheritances, divorce settlements, and life insurance proceeds acquired within 180 days of the petition date.[53] But no provision of Rule 1007 contains any requirements as to when or how a chapter 13 debtor is to amend her schedules to disclose a post-confirmation litigation claim that becomes property of her estate under section 1306(a)(1).[54]

In the Eleventh Circuit, however, case law is clear that a chapter 13 debtor has a "continuing duty" to amend her bankruptcy schedules to disclose a post-confirmation litigation claim.[55] Application of the Bankruptcy Code and Bankruptcy

---

[52] Fed. R. Bankr. P. 1007(h) (emphasis added). Rule 1007(h) was amended effective December 1, 2022, to address the provisions of new subchapter V of chapter 11, and to make some minor stylistic changes. The substance of the requirement as it applies to chapter 13 has not changed: the duty to file a supplemental schedule required by Rule 1007(h) continues for a chapter 13 debtor until a debtor receives her discharge.

[53] 11 U.S.C. § 541(a)(5).

[54] There are persuasive arguments – based on the nature of chapter 13 and how it operates – as to why this is the case. *See, e.g., In re Boyd*, 618 B.R. 133, 147-53 (Bankr. D.S.C. 2020) ("a debtor's income and assets are constantly changing over the three to five years that a chapter 13 case is pending. An expectation that a debtor amend schedules for every change in income and assets would be impractical and overly burdensome on the debtor."); *see also* 9 COLLIER ON BANKRUPTCY ¶ 1007.08 (16th ed. 2022) ("[T]o require scheduling of such property would be completely impracticable. The debtor's cash on hand could, literally, change every day, as items are purchased and new paychecks are received. Similarly, every item purchased or discarded could provide cause for amending the schedules.").

[55] *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274-75 (11th Cir. 2010); *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1244 (11th Cir. 2008); *Ajaka v. BrooksAmerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003). The Eleventh Circuit has, however, acknowledged the argument that this line of cases has been incorrectly perpetuated based on dicta from its decision in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002), which in turn cited dicta from a Fifth Circuit decision in *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). *See Robinson*, 595 F.3d at 1274; *see also Boyd*, 618 B.R. at 154-55

Rules as to when and how to fulfill this "continuing duty," however, is less clear. Although the text of Rule 1007 does not require a chapter 13 debtor to amend her schedules to disclose a post-confirmation litigation claim that becomes property of her estate under section 1306(a)(1), Rule 1009 does generally give a debtor the right to amend her schedules. That rule provides, in relevant part, that:

> **(a) General Right to Amend.** A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.[56]

Thus, the Eleventh Circuit has concluded that "Rule 1009 is a proper vehicle"[57] to disclose a post-petition litigation claim that became property of a chapter 13 debtor's estate under section 1306(a)(1).

### IV.  Even if the Debtor Disclosed the Litigation Claim, It Would Not Have Affected Her Chapter 13 Bankruptcy Estate or Her Creditors.

But even if the Debtor had previously disclosed the litigation claim – or if the Court permits her to reopen her case now to disclose it – it would not have, and will not have, any effect on her bankruptcy estate or her creditors. This is due to the nature of chapter 13 bankruptcy cases generally (as discussed above), as well as the

---

(criticizing cases citing *Coastal Plains*, and noting that *Coastal Plains* "only discusses disclosure prior to confirmation."). But under the "prior precedent rule," these Eleventh Circuit cases are "the law in this circuit unless and until reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by [the Eleventh Circuit] sitting en banc." *Martin v. Singletary*, 965 F.2d 944, 945 (11th Cir. 1992) (citing *United States v. Machado*, 804 F.2d 1537, 1543 (11th Cir. 1986)).
[56] Fed. R. Bank. P. 1009(a).
[57] *Waldron*, 536 F.3d at 1245.

11

particulars of her confirmed chapter 13 plan, which proposed to (and did) pay her unsecured creditors 100% of their claims. Thus, her creditors received the maximum amount they are entitled to receive in a chapter 13 case. In other words, whether the Debtor disclosed her litigation claim or was successful on her litigation claim had no bearing on the treatment of her unsecured creditors. They got repaid 100% of their claims regardless.

**V.      Reopening the Case Will Benefit the Debtor, and Will Not Prejudice Gulfstream.**

"[A]ccurate self-reporting is the bedrock upon which our bankruptcy system functions,"[58] and therefore "'the importance of full and honest disclosures cannot be overstated.'"[59] As the Eleventh Circuit noted in *Slater v. United States Steel Corp.*,[60] however:

> the Bankruptcy Code and Rules liberally permit debtors to amend their disclosures when an omission is discovered. Yes, the Bankruptcy Code requires debtors to disclose all their assets, including contingent and unliquidated claims. . . . But Bankruptcy Rule 1009, which was proposed by the Supreme Court and adopted by Congress, permits a debtor to amend a schedule or statement "as a matter of course at any time before the case is closed." . . . Further, the bankruptcy court retains broad discretion to reopen a closed case on a motion of the debtor or another party in interest "to administer" an asset that had not previously been scheduled. 11 U.S.C. § 350(b). It strikes us as inconsistent with these principles—which recognize that omissions occur and liberally allow amendment and correction of disclosures —to infer that a debtor who failed to disclose a lawsuit necessarily meant to manipulate the bankruptcy proceedings.[61]

---

[58] *In re Harber*, 553 B.R. 522, 534 (Bankr. W.D. Pa. 2016)
[59] *Id.* (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996)).
[60] 871 F.3d 1174 (11th Cir. 2017).
[61] *Id.* at 1186-87 (internal citations omitted).

12

To be clear, this Court has little tolerance for debtors who fail to adequately disclose assets on their bankruptcy schedules. When required to do so, the consequences for nondisclosure can be severe, including denial of a discharge[62] or even criminal charges.[63] Here, though, the Debtor's bankruptcy schedules were accurate when she filed them, and they were accurate when the Court confirmed her plan. Under Bankruptcy Code section 1306(a)(1), however, her post-confirmation litigation claim against Gulfstream did become property of her bankruptcy estate. And under Eleventh Circuit case law, she had a "continuing duty" to disclose it, and she failed to do so. But because her plan already provided for payment of 100% of her unsecured creditors' claims, even if she had filed amended bankruptcy schedules to disclose this claim, it would not have made any difference to her creditors, the chapter 13 trustee, or her bankruptcy estate. And, because in a chapter 13 case the debtor retains the right to pursue litigation claims – whether owned by her or her estate – disclosure would have had no effect on the chapter 13 trustee's administration of the case, the Debtor's performance of her obligations under her plan, or the Debtor's creditors.[64]

Accordingly, there will be no benefit to creditors in reopening this case to allow the Debtor to file amended schedules to disclose this post-confirmation litigation claim. But there also will be no detriment to creditors. They have already been paid 100% of their pre-petition claims – the maximum amount to which they are entitled in a chapter 13 bankruptcy case. The Debtor, however, will benefit from reopening

---

[62] *See* 11 U.S.C. § 727(a)(4)(A).
[63] *See* 18 U.S.C. § 152.
[64] Nor does lack of disclosure affect a chapter 13 debtor's standing to bring this claim, for the reasons previously discussed.

13

the case, because it will enable her to satisfy a procedural technicality under binding Eleventh Circuit case law, the result of which may allow her to pursue her litigation claim on the merits against Gulfstream in state court.[65] And as to Gulfstream, potentially having to defend this claim on the merits in state court cannot be said to prejudice it. Thus, allowing the Debtor to now fulfill this "continuing duty" to amend her bankruptcy schedules – which will have no effect on her bankruptcy estate, but which may allow her to pursue her claim on the merits in state court – constitutes sufficient cause to grant her motion to reopen.

## Conclusion

While this post-confirmation litigation claim was property of the Debtor's estate, there is no requirement in the text of the Bankruptcy Code or Bankruptcy Rules that she amend her schedules to disclose the claim. But Eleventh Circuit case law imposes this requirement, although it does not specify when this must be done. Accordingly, because the Court may reopen a chapter 13 case "to accord relief to the debtor, or for other cause," the Court concludes that it is appropriate to reopen the case here, to permit the Debtor to file amended bankruptcy schedules to disclose her post-confirmation litigation claim against Gulfstream in this 100%-payment, completed, and discharged chapter 13 case.

---

[65] Ultimately, it will be for the state court to determine whether the Debtor is judicially estopped from pursuing this claim.

For the reasons discussed above, it is therefore

**ORDERED** that:

1. The motion to reopen[66] is **GRANTED.**

2. Within 14 days of entry of this Order, the Debtor must file amended bankruptcy schedules and an amended statement of financial affairs.

3. After the Debtor files her amended bankruptcy schedules and amended statement of financial affairs, the Clerk of Court is directed to re-close the case.

### # # #

*Copies furnished to all interested parties by CM/ECF.*

---

[66] ECF No. 53.